UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

THERMOLIFE INTERNATIONAL, ) CASE NO: 2:20-MC-00326-ODW-ASx
LLC, ET AL,                )
                           )           CIVIL
        Petitioners,       )
                           )     Los Angeles, California
    vs.                    )
                           )    Wednesday, January 27, 2021
MATT TITLOW,               )
                           )
        Respondent.        )

HEARING RE:

PETITIONERS' MOTION TO COMPEL COMPLIANCE
WITH THIRD-PARTY SUBPOENA [DKT.NOS.1,7,10]

BEFORE THE HONORABLE ALKA SAGAR,
UNITED STATES MAGISTRATE JUDGE

**APPEARANCES:**         SEE PAGE 2

Court Reporter:          Recorded; AT&T; Digital

Courtroom Deputy:        Alma Felix

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES:**

For Petitioners:        ERIC BLAIR HULL, ESQ.
                        Kercsmar & Feltus, PLLC
                        100 Wilshire Blvd.
                        Suite 700
                        Santa Monica, CA 90401

Also present:           GREG COLLINS, ESQ.


For Respondent:         DANIEL S. SILVERMAN, ESQ.
                        Venable, LLP
                        2049 Century Park East
                        Suite 2300
                        Los Angeles, CA 90067

**Los Angeles, California; Wednesday, January 27, 2021**

**(Telephonic appearances)**

**(Call to Order)**

**THE CLERK:** Case Number MC-20-326-ODW(ASx), ThermoLife International, LLC, et al. versus Matt Titlow.

Counsel, beginning with Petitioners, please state your appearance for the record.

**MR. HALL:** Good morning.  This is Eric Hall on behalf of Petitioners.  With me as observers I have Greg Collins who is the lead counsel in a Southern District of Florida case underlying action, as well as Mr. Kramer who is one of the petitioners.

**THE COURT:** Okay, good morning.

**MR. SILVERMAN:** Good morning, Your Honor.  Dan Silverman on behalf of Matt Titlow Respondent.

**THE COURT:** All right.  Good morning.

This is the hearing on motions that were filed by ThermoLife in this case at Docket 1.

Petitioner ThermoLife filed a motion which appears to be seeking an order compelling the deposition of Matt Titlow, a third party to litigation pending between ThermoLife and another entity in the Southern District of Florida.  That motion was filed on December 11th, 2020; it's at Docket 1.

An opposition to that motion was filed on December 24th, 2020 at Docket 7 by Matt Titlow, the third party that was

1 being subpoenaed.

2 A reply was filed at Docket 10 on January 5th, 2021,
3 and a surreply was filed on January 6th at Docket 11.

4 So just let me say preliminarily that the Local Rules
5 of the Court clearly state that the opposing party shall not
6 file a surreply absent a Court Order and a Court Order was not
7 sought to filed a surreply in this case and so the Court will
8 disregard that surreply.

9 So was anything else filed in connection with what's
10 before the Court other than what I've just stated?

11 **MR. HALL:** Your Honor, this is Eric Hall for
12 Petitioners and no, not from our view.

13 **THE COURT:** All right. So let me first ask you,
14 Mr. Hall and Mr. Collins, what is the status of the request for
15 an extension of the discovery cutoff date in the Florida action
16 for the purpose of taking Mr. Titlow's deposition?

17 **MR. HALL:** Your Honor, we filed a second motion for
18 extension to move the date beyond the December 30th date. That
19 briefing largely tracked the briefing that is before Your Honor
20 today explaining the circumstances of the service issues as far
21 as Mr. Titlow's evasion of service and Mr. Titlow's failure to
22 show up on the 29th. That motion has been fully briefed and is
23 pending in the Southern District of Florida right now.

24 **THE COURT:** Okay. So --

25 **MR. HALL:** And one other --

1         **THE COURT:** Go ahead.

2         **MR. HALL:** I'm sorry, Your Honor, I didn't mean to

3 interrupt.

4         One other note is we did make --

5         **THE COURT:** No, no problem.

6         **MR. HALL:** We did make the Southern District of

7 Florida aware of this hearing today.

8         **THE COURT:** All right. So the motion that was made

9 on December 11, 2020 outlined Mr. Titlow's failure to appear

10 for the deposition notice that he received with respect to the

11 deposition that was noticed for October 23rd. And when a

12 non-party witness fails to obey a properly obeyed [sic]

13 subpoena and doesn't file any objections to that subpoena, the

14 only sanction that is available to the moving party is a

15 contempt citation. And magistrate judges do not have the -- or

16 do not have those sanction powers except in some limited

17 circumstances that are not applicable here. So to the extent

18 that you're seeking contempt, an order of contempt against

19 Mr. Titlow for failing to appear on October 23rd or to file any

20 objections or respond to the subpoena in any way, that request

21 must be heard before Judge Wright.

22         Now, with respect to the failure of -- with respect

23 to the subpoena that was noticed -- for the deposition that was

24 noticed on December 29th, that came up in the context of the

25 opposition to the motion. So it's not really a motion that's

1  before the Court because the motion that's before the Court is
2  seeking an order compelling the deposition on October 23rd.
3         But let me just say, having reviewed all the filings,
4  the Court finds that Mr. Titlow was served with a subpoena.
5  That the service was valid for the October deposition.  And his
6  failure to respond or appear then can only be addressed in a
7  contempt motion which must be brought before Judge Wright.
8         Now with respect to the second deposition notice, the
9  Court finds that Mr. Titlow was validly served with the
10 subpoena.  That the subpoena sought information that was both
11 relevant to and proportional to the needs of the case.
12        Respondent's objections to the subpoena are
13 overruled.  The Court finds that Mr. Titlow did intentionally
14 evade service of the subpoena until he was finally served.  And
15 that ThermoLife was diligent in attempting to serve him with a
16 subpoena after the court in Florida granted the limited
17 extension for the purpose of taking his deposition.
18        And so to the extent that ThermoLife is now seeking
19 from this Court an order compelling the deposition of Matt
20 Titlow, that motion is granted but is subject to the district
21 court in Florida's ruling on the pending motion to extend the
22 discovery deadline for the purpose of taking Mr. Titlow's
23 deposition.
24        So those are my sort of preliminary thoughts on the
25 filings that were made in this matter.

1	Do any of the parties wish to be heard on this?

2	**MR. SILVERMAN:** Yes, Your Honor. Respondent wishes
3	to be heard.

4	**THE COURT:** All right. Go ahead.

5	**MR. SILVERMAN:** The first and foremost, respectfully,
6	Your Honor, I don't understand how the Court can find that the
7	subpoena was validly served when literally what was served was
8	a blank piece of paper. The -- Mr. Titlow's wife signed an
9	affidavit swearing what she received was a blank piece of
10	paper.

11	The fact of the matter is, they can object all they
12	want or dispute it all they want but the process server
13	absolutely perjured himself. Ms. Rasmussen (phonetic),
14	Mr. Titlow's wife, knows what she was handed. And she, in fact
15	she described in her declaration the dialogue she had with the
16	process server. He didn't serve an envelope; he served three
17	blank pieces of pap -- basically blank pieces of paper, a
18	subpoena that was completely unfilled. And in fact, she asked
19	him about it -- What is this -- because it was very
20	unprofessional. And there were -- it wasn't stapled; it wasn't
21	in an envelope, nothing, and they both laughed about it. She
22	thought, quite frankly, it was a hoax. She didn't know what it
23	was and she told her husband when he got home that night about
24	it. So not only is the declaration perjured to say it was
25	filled out but it's absolutely false. And his own declaration

1  shows that it's false in it because he talks about the fact
2  that Mr. Titlow was in the back room.  He wasn't; he wasn't
3  home.
4         So I, for the life of me, do not understand how the
5  Court can find that the subpoena in October was valid when
6  there was no subpoena served.  And in fact, evidence of that
7  fact is, had he been validly served, he would have moved to
8  quash.  We would have moved to quash that subpoena from all the
9  grounds that we opposed the motion to compel.  He wouldn't just
10 not shown up.  He would have told me about it and I would have
11 moved to quash it.  But since he was served with nothing, he
12 had no obligation to do anything.  So I don't understand how
13 the Court can find that the subpoena served -- whatever was
14 served in October was valid and compelled him to attend the
15 deposition.
16        As to the December deposition, I don't understand how
17 the Court -- how they can allege or complain that he evaded
18 service.  We're in a pandemic and somebody knocks on his door,
19 a stranger knocks on his door, he's not going to answer his
20 door.  That doesn't mean you're evading service of a subpoena;
21 it means you're not answering the door to anybody, whether it's
22 the Girl Scout cookies they're selling or a subpoena or whoever
23 it may be, he's not answering his door.  And apparently he was
24 outside of his house at the time a subpoena was served but he
25 wasn't evading service; he simply wasn't answering his door for

1  anybody because we're in the middle of a pandemic.
2          So -- and in terms of the issue of contempt, they
3  didn't seek contempt in their motion.  So I don't see how it
4  can even go before the district court because in their moving
5  papers, they didn't ask for contempt.  They didn't ask for
6  contempt until the reply brief when they asked for contempt
7  regarding the failure to show up for a December 29th deposition
8  -- which he both opposed the motion to compel; he served
9  objections.  And in his opposition he stated that he wasn't
10 available on December 29th.
11         For all those reasons, whether this Court or the
12 district court has authority, there is no basis whatsoever to
13 find contempt.  Again, for the October -- they didn't even move
14 for it in their moving papers so there's no -- there is no --
15 nothing on the table in terms of contempt.
16         So I'm not going to address the issue of relevance.
17 Obviously we've addressed it in our papers.  And obviously you
18 disagree that there's relevance but given that the Florida
19 court said that the order specifically says -- first the court
20 chastised ThermoLife for delaying in terms of trying to take
21 the deposition.  The order says:
22         "Defendants do not address why.  As Plaintiffs point
23         out, they failed to serve and depose Mr. Titlow
24         earlier in the case."
25         It then says:

1         "The Court will grant Defendants until December 30th

2         to depose Mr. Titlow. No extension will be granted."

3     So they didn't get an extension. They filed a motion

4 for an extension but that motion has not yet been granted. So

5 if I'm -- what I guess I am assuming is that the motion is --

6 this motion is being granted conditionally upon whether the

7 Florida Court permits that extension. Is that accurate?

8     **THE COURT:** That is accurate.

9     And you're right that ThermoLife did not seek

10 contempt sanctions in the motion that they filed on December

11 11th.

12     But I note on the docket that on January 6th, 2021 at

13 Docket 12, they did file a motion for an order of contempt.

14 And it appears that that motion was construed as being related

15 to the motion that was filed on December 11th, 2020. And since

16 that motion was before this Court, the contempt motion filed on

17 January 6th was also been calendared before this Court. But

18 now, having reviewed the pleadings, it appears that that motion

19 for contempt filed on January 6th, 2021 -- which can only

20 relate to the deposition notice for October -- it needs to be

21 presented to Judge Wright.

22     And so you're correct in that if they want to seek an

23 order of contempt for Mr. Titlow's failure to appear for his

24 deposition in October, that needs to be addressed before Judge

25 Wright and then it will be up to Judge Wright to determine

1  whether service was valid.

2  I find service was valid because having reviewed the
3  declarations that were submitted by the parties, I don't find
4  -- I find it just completely implausible that a process server
5  would serve blank papers. And given sort of the history of
6  this case and Mr. Titlow's evasion of service -- I understand
7  we're in a pandemic and people don't answer their doors -- but
8  the process server did say that he announced himself and
9  Mr. Titlow was aware of the fact that his deposition was being
10 sought in this matter. So those are the factors that informed
11 my finding that he was served validly with the October
12 deposition notice and obviously was served with respect to the
13 December notice.

14 Again, that's my finding but as it relates to any
15 order of contempt, it will be up to Judge Wright to determine
16 those facts from what's presented -- what has been presented by
17 the party.

18 **MR. SILVERMAN:** Well, Your Honor, the --

19 **THE COURT:** So --

20 **MR. SILVERMAN:** I'm sorry to interrupt.

21 **THE COURT:** Can you just identify yourself because we
22 are on --

23 **MR. SILVERMAN:** This is Dan Silverman for Mr. Titlow.

24 **THE COURT:** Okay. Go ahead.

25 **MR. SILVERMAN:** As to the process server and the

1  accuracy -- I'll put it generously -- the accuracy of his

2  affidavit, setting aside -- well, I don't want to set it aside

3  because I can't get over the fact that what possible reason

4  would have Mr. Tidlow's wife have for perjuring herself about

5  what she was handed?  She's not -- she's not a party; she --

6  Mr. Titlow is not a party to the action.  There'd be no reason.

7  They have no -- other than the fact that he doesn't want to be,

8  quite frankly, bothered -- and in this case harassed by

9  ThermoLife and Mr. Kramer who he's already filed one baseless

10 lawsuit against him, doesn't want to be deposed for a second

11 but that's irrelevant.  He'd be willing to be deposed if he was

12 served with a valid subpoena.  He wasn't.  He got a blank --

13 and he wasn't home.  And the affidavit from the process server

14 stated that Mr. Titlow was home and in the background and in

15 fact said he was there.  That's absolutely false.  He wasn't

16 even home at the time.  So that fact alone raises serious

17 credibility issues with the process server.

18         And then on top of that, I don't know what -- you

19 know, how it was downloaded from what ThermoLife prepared --

20 I'm sure they prepared a valid subpoena but how it got transit

21 -- the transit from them to the process server, technically

22 speaking, I don't know how it ended up becoming blank.  But

23 what I do know is the only person in this world that knows the

24 truth is Ms. Rasmussen.  And she testified under penalty of

25 perjury that she was served a blank piece of paper, basically,

1  a subpoena that had nothing filled out on it.  And commented to
2  the process server about it and they laughed about it, and the
3  process server had no further information.  That does not sound
4  like a very professional process server, quite frankly, that he
5  wouldn't serve in an envelope, wouldn't staple it, and serves
6  three loose pieces of paper that are not filled out.  And he
7  has more reason to quite frankly not tell the truth because his
8  job and his career are on the line if he turns out that he
9  served blank pieces of paper.
10         So again, I don't understand how the Court can
11 possibly say that Ms. Rasmussen is lying and she was actually
12 served with something that she absolutely wasn't served with.
13 I mean, that --
14         **THE COURT:**  Well, I understand your argument.
15         **MR. SILVERMAN:**  She knows the truth, she's the only
16 one that knows the truth.
17         **THE COURT:**  Right.
18         **MR. SILVERMAN:**  Well --
19         **THE COURT:**  Well, like I said, I have reviewed
20 everything, including the fact that Counsel contacted you about
21 the deposition in October and there was no response.  So just
22 looking at all the facts, those are my findings.
23         Again, not relevant because the motion for -- if
24 Petitioner wants to seek an order of contempt, they'll have to
25 present all of this to Judge Wright.

1   　　　　　But with respect to the deposition notice for
2   December 29th, I'm granting that Motion to Compel, conditioned
3   on the court in Florida granting the pending motion for an
4   extension of the fact discovery deadline for the purpose of
5   taking this deposition.
6   　　　　　All right.  Is there anything further that we need to
7   address on this motion?
8   　　　　　**MR. HALL:**  Not from Petitioner, Your Honor.
9   　　　　　**THE COURT:**  All right.  So if Petitioner wants to
10  seek an order of contempt, then you just need to refile your
11  order of contempt and title it only "Order of Contempt" and not
12  also "Motion to Compel".  I think the reason it got routed to
13  me was because of -- because it also sought an order compelling
14  the deposition.  All right?
15  　　　　　**MR. HALL:**  Thank you very much, Your Honor.
16  　　　　　**THE COURT:**  All right.  Is there's nothing further
17  then we'll conclude the call.
18  　　　　　**MR. SILVERMAN:**  Thank you, Your Honor.
19  　　　　　**THE COURT:**  Thank you.  Thank you.
20  　　　**(Proceeding adjourned)**
21
22
23
24
25


**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>February 9, 2021</u>
         **Signed**                                              **Dated**


*TONI HUDSON, TRANSCRIBER*